IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WAYNE RAUCEO,<br><br>   *Plaintiff,*<br><br> v.<br><br>PHILADELPHIA GAS WORKS,<br><br>   *Defendant.* | CIVIL ACTION<br>NO. 19-4279 |

**PAPPERT, J.**                             February 3, 2020

<u>**MEMORANDUM**</u>

  After Plaintiff Wayne Rauceo was passed over for a promotion and not assigned to projects involving overtime pay, he filed a lawsuit against his employer Philadelphia Gas Works. He brings claims of retaliation, hostile work environment, disparate treatment discrimination and disparate impact discrimination on the basis of his race, color, national origin and age in violation of Title VII, the Age Discrimination in Employment Act, and the Pennsylvania Human Relations Act.[1] PGW filed a Motion to Dismiss the disparate impact claim, which the Court grants for the reasons that follow.

I

  Rauceo is an African American man of Caribbean descent over the age of forty. (Am. Compl. ¶¶ 9–11, ECF No. 6.) He began working for PGW in 2008 as a shift supervisor, and since 2012, Rauceo has served as an operations supervisor at PGW's Gas Processing Operations Passyunk Plant. (*Id.* ¶¶ 12–13.)

---

[1]  Because the same legal standards apply in Title VII and Pennsylvania Human Relations Act disparate impact claims, the Court will refer to them together as "Title VII" for the remainder of this Memorandum. *Crawford v. Verizon Pa., Inc.*, 103 F. Supp. 3d 597, 603 (E.D. Pa. 2015) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 409 (3d Cir. 1999)). The differences between Title VII and ADEA disparate impact claims are discussed in Section III.A, note 2.

1

In June of 2015, Rauceo and his coworker David Martinez both applied for the general supervisor position at the Passyunk plant. (*Id.* ¶ 40.) The qualifications for that job required applicants to have an associate's degree in a relevant field of study or three to five years of experience working as an operations supervisor. (*Id.* ¶ 41.) Rauceo claims that he met both requirements. (*Id.* ¶¶ 36–38.) But according to Rauceo, Martinez—who is a Caucasian Hispanic under the age of forty—did not meet either requirement because he only held a high school diploma and lacked the required experience. (*Id.* ¶¶ 39, 42.) Despite Martinez's apparent ineligibility for the position, both candidates completed an assessment test and interviewed for the position. (*Id.* ¶¶ 44–48.) PGW ultimately selected Martinez for the job. (*Id.* ¶ 48.)

Two years later in September of 2017, the Passyunk plant began work on the "TP1 project," which Rauceo describes as involving "integrity testing of gas distribution pipes." (*Id.* ¶ 62.) The TP1 project requires plant supervisors to work on the assignment and it includes overtime. (*Id.*) Rauceo claims that Martinez did not schedule any African American, brown or black supervisors to work on the project, despite their availability. (*Id.* ¶¶ 63–64, 68.) Instead, Martinez allegedly only scheduled himself and two other Caucasian men for the job. (*Id.* ¶ 63.)

In November of 2017, Passyunk plant employees were working on a month-long "LNG truck unloading project." (*Id.* ¶ 70.) Rauceo again alleges that Martinez did not schedule him or any African American, brown or black supervisors for overtime work on that assignment. (*Id.*) Martinez's failure to schedule Rauceo purportedly violated PGW's policy that "require[s] even scheduling of overtime to be done on an objective standard of scheduling ('high/low' basis)." (*Id.* ¶ 69.)

2

The final alleged incident in the Amended Complaint involves another overtime issue. On February 8, 2018, Martinez allegedly texted Rauceo, who was at home at the time, offering him four hours of overtime work that day. (*Id.* ¶¶ 75–76.) Rauceo declined the overtime, and Martinez subsequently "wrote [him] up" for overtime refusal. (*Id.* ¶¶ 76–77.) According to Rauceo, Martinez should not have written him up because PGW policy defines "overtime refusal" as occurring only "when an employee, who is currently on the clock, refuses the overtime." (*Id.* ¶¶ 77–78.) The purported policy, however, does not apply to off-the-clock employees like Rauceo. *See* (*id.*).

II

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them

plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

III

A

Count IV of the Amended Complaint alleges Title VII and ADEA disparate impact claims on the basis of race, color, national origin and age. (Am. Compl. ¶¶ 92–95.) Rauceo avers that PGW's "policies and practices of promotions, scheduling work and scheduling overtime," created a disparate impact on protected class members, including himself. (*Id.* ¶ 93.) PGW asks the Court to dismiss Count IV, arguing that Rauceo fails to plead sufficient facts alleging specific employment policies or that such policies had a disparate impact on members of a protected class. *See generally* (Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 8).

To establish a *prima facie* disparate impact claim under Title VII, the plaintiff must demonstrate that the application of a facially neutral standard caused a significantly discriminatory pattern. *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476–77 (3d Cir. 2011). Under the ADEA, the plaintiff must similarly "(1) identify a specific facially neutral policy, and (2) proffer statistical evidence that the policy caused a significant age-based disparity." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 69 (3d Cir. 2017).[2] The burden on a disparate impact plaintiff at the

---

[2]     The scope of disparate impact liability under the ADEA is narrower than under Title VII because of two textual differences in the statutes. First, under the ADEA, conduct having a disparate impact on employees is permissible when the practice or policy is based on "reasonable factors other than age," whereas under Title VII there must be a showing of "business necessity."

4

motion to dismiss phase, however, "is much less onerous." *Ladd v. Boeing Co.*, 463 F. Supp. 2d 516, 523 (E.D. Pa. 2006) (quoting *Powell v. Ridge*, 189 F.3d 387, 394 (3d Cir. 1999), *overruled on other grounds by Alexander v. Sandoval*, 532 U.S. 275 (2001)). To survive dismissal, all Rauceo must do is plead facts sufficient to allege that a facially neutral policy or practice's adverse effects fall disproportionately on a group protected by Title VII or the ADEA to which he belongs. *Ladd*, 463 F. Supp. 2d at 523.

B

Rauceo's disparate impact claim includes three different policies and practices—promotions, scheduling work, and scheduling overtime—which the Court addresses in turn. *See* (Am. Compl. ¶ 93).

1

The first policy that Rauceo attempts to identify relates to promotions, which refers to PGW's decision to promote David Martinez—a Caucasian Hispanic under the age of forty—rather than Rauceo for the general supervisor position. (Am. Compl. ¶¶ 14(d), 48.) In doing so, Rauceo claims that PGW violated its own promotions policy because Martinez did not meet the position description's requirements of having an associate's degree or three to five years of experience. (*Id.* ¶ 41, 48.)

In making this allegation, however, Rauceo fails to identify any employment practice or policy. *N. Hudson Reg'l Fire & Rescue*, 665 F.3d at 476–77. Instead, he merely alleges that PGW selected Martinez despite him not meeting the job's minimum qualifications. *See* (Am. Compl. ¶¶ 40–48). That PGW allegedly flouted the listed job

---

*Karlo*, 849 F.3d at 69. Second, Congress did not amend the ADEA when it amended Title VII in 1991, so ADEA plaintiffs must still "isolate[e] and identify[] the *specific* employment practices" causing the alleged statistical disparities. *Id.* at 70 (citation omitted). Neither of these distinctions are material here, so the Court analyzes the Title VII and ADEA disparate impact claims together.

requirements when selecting Martinez suggests that Rauceo's claim is one of intentional discrimination.

To the extent that Rauceo's reference to the assessment test or interview could be construed as facially neutral policies, the Amended Complaint includes no factual allegations that such practices "adversely impact[ed] protected class members." (*Id.* ¶ 93); *see, e.g., Knox v. PPG Indus., Inc.*, 2016 WL 279004, at *6–7 (W.D. Pa. Jan. 22, 2016) ("While Plaintiff does employ some disparate-impact buzzwords in her complaint—e.g., she claims that PPG's policies 'adversely impacted' women—these 'are bare legal conclusions, not facts[,]' [. . .], and thus cannot carry Plaintiff's claim over the plausibility threshold."). He accordingly fails to allege a disparate impact claim with respect to the purported promotions policy.

2

The next policy that Rauceo alleges involves work scheduling. (Am. Compl. ¶ 93.) Rauceo once again fails to identify a neutral policy or practice with respect to scheduling. Instead, he only alleges that Martinez "fail[ed] to schedule any African American, brown and black supervisors to work on the two-week TP1 project" as part of his "persistent intentional discrimination." (Am. Compl. ¶¶ 63, 65). Nowhere in the Amended Complaint does Rauceo refer to a scheduling policy, and simply equating his personal observations with a PGW policy does not make them so. *See Hanrahan v. Blank Rome LLP*, 142 F. Supp. 3d 349, 354 (E.D. Pa. 2015) (explaining that plaintiff's observations regarding law firm hiring practices fails to equate to a specific employment practice). Rauceo has accordingly failed to state a disparate impact claim with respect to the scheduling policy.

Rauceo's final disparate impact allegation involves PGW's overtime policy, which "required even scheduling of overtime to be done [on] an objective standard scheduling." (Am. Compl. ¶¶ 69 93.) Rauceo avers that Martinez disregarded the policy by not scheduling any African American, brown, or black supervisors for overtime during the LNG truck unloading process in November of 2017. *See* (Am. Compl. ¶ 70).

Rauceo fails to state a disparate impact claim with respect to the overtime policy because Martinez purportedly applied the rule in a deliberately discriminatory fashion. That Martinez allegedly only scheduled overtime for nonprotected class members in violation of the policy suggests that Rauceo's claim is one of *intentional* discrimination—not the result of adverse effects from a facially neutral policy. *See Pennsylvania*, 110 F. Supp. 3d at 549 (explaining disparate impact claims do not involve intentional discriminatory motives).

## IV

Courts should freely give leave to amend a complaint when justice so requires. Fed. R. Civ. P. 15(a)(2). "This certainly includes amendment to cure defective allegations." *Shifflett v. Korszniak*, 934 F.3d 356, 366 (3d Cir. 2019) (citing 6 Wright & Miller, *Federal Practice and Procedure: Civil* § 1474 (3d ed. 2019)). Rauceo is free to amend Count IV consistent with this Memorandum and to the extent he can allege facts sufficient to state a plausible claim for relief.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

GERALD J. PAPPERT, J.